IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CAREY DALE GRAYSON,

    Plaintiff,

v.

JOHN Q. HAMM, Commissioner,
Alabama Department of Corrections,

TERRY RAYBON, Warden,
Holman Correctional Facility,

STEVEN MARSHALL, Attorney
General, State of Alabama, and

KAY IVEY, Governor, State of
Alabama.

    Defendants.

No. 2:24-cv-376-RAH-KFP

**CAPITAL CASE**
**Execution Set for**
**November 21-22, 2024**

_____

## MOTION TO DISQUALIFY DEFENDANT MARSHALL FROM REPRESENTING HIS CO-DEFENDANTS

As required by the Alabama Rules of Professional Conduct and this Court's rules,[1] undersigned counsel alerted this Court of their concerns about Defendant

---

[1] The Alabama Rules of Professional Conduct apply to attorneys practicing before this Court. M.D. Ala. LR 83.1(g). Alabama Rule of Professional Conduct 8.3(a) provides: "A lawyer possessing unprivileged knowledge of a violation of Rule 8.4 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

1

Marshall's representation of his co-defendants.[2] This Court ordered undersigned counsel to file any motion to disqualify Defendant Marshall from representing his co-defendants by August 28, 2024.[3] Given the serious conflict of interest and ethical issues apparent from the information known to undersigned counsel and set forth below, this Court should disqualify Defendant Marshall from representing his co-defendants and controlling the representation of Defendants Hamm and Raybon.[4]

## FACTS

**A.  Defendant Marshall removed the authority of Defendant Hamm's attorneys to appear in court on his—and Defendant Raybon's—behalf and accused Defendant Hamm's attorney of making "false" statements about Defendant Marshall.**

In April 2023, Defendant Marshall[5] stripped Alabama Department of Corrections (ADOC) attorneys of authority to appear in court[6] for any reason,

---

[2] ECF Doc. 20 at 1 n.1. Defendants responded with a footnote describing the notification as "a baseless ethical accusation" while averring, "all Defendants consent to the joint representation by the Attorney General." ECF Doc. 23 at 15 n.4.

[3] ECF Doc. 35 at 1.

[4] As explained below, Defendant Ivey has full authority to designate alternate counsel for herself and Defendants Hamm and Raybon notwithstanding Defendant Marshall's opposition and implicit advice to the contrary.

[5] References to Defendant Marshall are to his official capacity as Attorney General of the State of Alabama.

[6] ADOC attorneys' ability to represent ADOC in legal proceedings was purportedly contingent on their being designated assistant attorneys general by Defendant Marshall. See Ala. Code § 36-15-21 ("All litigation concerning the interest of the state, or any department of the state, shall be under the direction and control of the Attorney General. The employment of an assistant attorney general, other than an assistant attorney general employed in the office of the Attorney General, for the purpose of representing the state or any department thereof shall be by the Attorney General with

2

including to defend Defendants Hamm or Raybon.[7] Shortly thereafter, Defendant Marshall, through his chief legal counsel, publicly accused ADOC attorney Mandy Speirs of making (and failing to correct) a "false" statement about Defendant Marshall's alleged interference in attempts to settle litigation against ADOC.[8] Specifically, Ms. Speirs asserted Defendant Marshall "prohibit[ed]" ADOC "from settling" a prison conditions lawsuit "multiple times."[9]

**B.   Defendant Marshall (or his attorney-employees) wrote the nitrogen hypoxia protocol.**

Defendant Marshall developed and wrote the nitrogen hypoxia execution protocol (Protocol) which was then approved by Defendant Hamm.[10]

**C.   Defendant Marshall's attorney-employees are essential fact witnesses because they tested and provided evidence in support of the Protocol.**

---

the approval of the Governor[.]"). Defendant Marshall appears to have advised Defendant Hamm that Defendant Marshall has the final word over whether ADOC attorneys can represent him (or ADOC) in court. This is wrong. Defendant Ivey can authorize ADOC attorneys—or any other attorney(s)—to represent the interests of the State of Alabama notwithstanding Defendant Marshall's opposition. *See Riley v. Cornerstone Cmty. Outreach, Inc.*, 57 So. 3d 704, 732 (Ala. 2010) ("[T]his Court has expressly rejected the argument that § 36-15-21 means 'only the Attorney General can litigate the interests of the State and its various departments.'") (citations omitted).

[7] *See, e.g.*, Ivana Hrynkiw, *Alabama Attorney General Steve Marshall strips prison system lawyers of power*, AL.com (Apr. 12, 2023), https://www.al.com/news/2023/04/alabama-attorney-general-steve-marshall-strips-prison-system-lawyers-of-power.html.

[8] Josh Moon, *AG letter: ADOC attorney lied, has failed to correct the record*, Ala. Pol. Rep., July 20, 2023, https://www.alreporter.com/2023/07/20/ag-letter-adoc-attorney-lied-has-failed-to-correct-the-record/ (the purportedly false statement was "the attorney general has prohibited [ADOC] from settling [the lawsuit] multiple times") (first bracket in original).

[9] *Id.*

[10] *See, e.g.*, ECF Doc. 1 at 4.

3

Several assistant or deputy attorneys general donned the mask to be used in the Protocol, and hooked to room air, tested whether they could be heard giving mock "last words" while being videotaped.[11] They were even proffered as witnesses Defendants Hamm and Raybon "may call" in the *Smith* litigation.[12] Defendant Marshall "produc[ed] their direct witness statements and ma[de] them available for cross-examination during the preliminary injunction hearing."[13] One employee even provided a declaration on a contested factual and technical issue relevant to the constitutionality of the Protocol.[14]

**D.     Defendant Marshall's interests in executions without limitation or input from his co-defendants conflict with the interests of his clients, Defendants Hamm and Ivey.**

While Defendant Marshall has decried delays and challenges to execution protocols,[15] Defendants Ivey and Hamm called for a pause on executions following

---

[11] Defs.' Witness List, *Smith v. Hamm*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 15, 2023), ECF Doc. 52 at 2-3 (identifying seven deputy or assistant attorneys general—James Houts, Lauren Simpson, Jasper Roberts, Cameron Ball, Alana Cammack, Thomas Govan, and Audrey Jordan—as witnesses).

[12] *Id.* Defendant Marshall was not a co-defendant in *Smith*.

[13] *Id.*

[14] Defs.' Resp., *Smith*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 20, 2023), ECF Doc. 103 at 9 (describing sealed exhibit).

[15] *See, e.g.*, Dylan Smith, *AG rejects moratorium on executions: 'Justice delayed is justice denied*,' Yellowhammer News, Dec. 5, 2022, https://yellowhammernews.com/ag-rejects-moratorium-on-executions-justice-delayed-is-justice-denied/ (Defendant Marshall: "What occurred on Nov. 17 was a travesty, but not for the many reasons that death penalty opponents and death row sympathizers would have the public to believe.").

4

two botched execution attempts in 2022.[16] Although, two weeks later, Defendant Marshall agreed not to seek more dates pending that review,[17] he claimed, "[T]here's only two parties involved in setting an execution in Alabama. That's me as the attorney general and our Alabama Supreme Court."[18] Defendants Hamm and Raybon have expressed no public opinion on capital punishment.

If Defendants Hamm or Raybon do not wish to conduct an execution (because they are not ready or otherwise), Defendant Marshall—the only attorney permitted to appear for them in court absent Defendant Ivey asserting her supreme authority—can act in a manner inconsistent with their wishes in pursuing his own interests. This conflict is palpable here because Mr. Grayson seeks only injunctive relief, meaning any Defendant could moot Mr. Grayson's lawsuit by settling with him. Defendant Marshall cannot be reasonably expected to go against his own interests, including in relaying and advising on any settlement offer made to or by

---

[16] Ivana Hrynkiw, *Gov. Kay Ivey orders moratorium on executions in Alabama*, AL.com, Nov. 21, 2022, https://www.al.com/news/2022/11/gov-kay-ivey-orders-moratorium-on-executions-in-alabama.html (Defendant Ivey: "Working in conjunction with Alabama Department of Corrections Commissioner John Hamm, Governor Ivey is asking that the Department of Corrections undertake a top-to-bottom review of the state's execution process, and how to ensure the state can successfully deliver justice going forward.").

[17] Mike Cason, *Alabama AG Steve Marshall says review of execution procedures should be 'expedited quickly,'* AL.com, Dec. 5, 2022, https://www.al.com/news/2022/12/alabama-ag-steve-marshall-says-review-of-execution-procedures-should-be-expedited-quickly.html.

[18] *Id.*

5

one or more of his co-defendants, any one of whom could moot the lawsuit by settling.

## LAW & ARGUMENT

**A.     The law governing motions to disqualify counsel.**

"Motions to disqualify are governed by": (1) "the local rules of the court in which they appear"; and (2) "standards developed under federal law."[19] "Disqualification . . . is a drastic remedy that should be resorted to sparingly."[20] Violation of "an ethical rule is a necessary but not always sufficient condition for disqualification."[21] That is because, "even if an ethical rule has been violated, the Court must look to 'various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment[.]'"[22] "A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court."[23]

---

[19] *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994).

[20] *Kleiman v. Wright*, 662 F. Supp. 3d 1247, 1253 (S.D. Fla. 2023) (citing *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)).

[21] *Id.* (footnote and citation omitted).

[22] *Id.* (quoting *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005)).

[23] *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980) (citation omitted).

In Alabama, "[a] trial court has the authority and the discretion to disqualify counsel for violating the Rules of Professional Conduct, and a 'common sense' approach should be used."[24] An opposing party has standing to seek disqualification based on a violation of the Alabama Rules of Professional Conduct.[25] A motion to disqualify must be filed "within a reasonable time after discovering the facts constituting the basis for the motion."[26] Waiting six months and "while discovery was ongoing and the case was being prepared for trial" does not satisfy the reasonable time requirement.[27]

While this Court has adopted the Alabama Rules of Professional Conduct, "the ethical standards that govern attorneys who practice before [this C]ourt are determined by federal and not state law . . . [and] th[is C]ourt is not bound by state court interpretations of those rules."[28] In deciding motions to disqualify, this Court "follow[s] the balancing approach outlined by the Eighth Circuit Court of Appeals in *Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir.

---

[24] *Ex parte Lammon*, 688 So. 2d 836, 838 (Ala. Civ. App. 1996) (citing *Roberts v. Hutchins*, 572 So. 2d 1231, 1234 (Ala. 1990)).

[25] *Ex parte Wheeler*, 978 So. 2d 1, 7 (Ala. 2007) ("Rule 8.3 imposes a duty to report unethical behavior 'to a tribunal or other authority' and specifically to report behavior in violation of Rule 8.4. CSX and the remaining defendants therefore have standing to seek the disqualification of Spain & Gillon on the allegation of impropriety under Rule 8.4(a).") (footnote omitted).

[26] *Ex parte Intergraph Corp.*, 670 So. 2d 858, 860 (Ala. 1995).

[27] *Id.*; *see also Johnson v. Brown*, 370 So. 3d 241, 246 (Ala. Civ. App. 2021) (not reasonable to wait until after trial to move to disqualify).

[28] *In re Emp. Discrimination Litig. Against Ala.*, 453 F. Supp. 2d 1323, 1330-31 (M.D. Ala. 2001) (citations omitted).

1978))[.]"²⁹ The approach "requires a balancing of . . . three competing interests: '(1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice.'"³⁰

This Court must also "consider[] . . . other important issues": (1) "ethical violations come in varying degrees of severity," with "disqualification . . . always a drastic measure" only to be imposed "when absolutely necessary"; (2) "because of the impact" disqualification "has on the party losing her counsel, the moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification"; (3) where "other means of addressing a violation short of disqualification are available to the court—like exclusion of ill-gotten evidence," they "should be used when appropriate"; and (4) "the court must exercise extreme caution in considering" disqualification "to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents."³¹

**B.      Defendant Marshall's continued representation of his co-defendants violates the Alabama Rules of Professional Conduct.**

---

²⁹ *Id.* at 1331.

³⁰ *Id.* (quoting *Spencer Foods*, 572 F.2d at 165).

³¹ *Id.* at 1331-32 (citations omitted).

Alabama Rules of Professional Conduct 1.2(a), 1.7(b), 1.8(g), 3.7, and 5.4(c), individually and collectively call for disqualifying Defendant Marshall from representing his co-defendants.

### 1. Rule 3.7(a)

Alabama Rule of Professional Conduct 3.7(a), in relevant part, provides: "A lawyer shall not act as an advocate at a trial[32] in which the lawyer is likely to be a necessary witness, except where . . . [t]he testimony is related to an uncontested issue . . . or . . . [d]isqualification of the lawyer would work substantial hardship on the client."[33] While there is an exception—"[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness, unless precluded from doing so by Rule 1.7 or Rule 1.9"[34]—it is unlikely to apply here. That is because Defendant Marshall has "signed" all pleadings[35] and several

---

[32] On its face, Rule 3.7 only prohibits a lawyer-witness from representing a client "*at trial*," rather than "at an early stage." *Henderson v. City of Troy*, No. 2:16-cv-130-JEM, 2016 WL 4157333, at *2 (M.D. Ala. Aug. 4, 2016) (emphasis in original). Here, a preliminary injunction hearing is the equivalent of a trial and should be treated as such. *Cf. Main Events Prod., LLC v. Lacy*, 220 F. Supp. 2d 353, 357 (D. N.J. 2002) (Not "address[ing] the intermediate situation where an attorney must testify not at a trial but at a pre-trial evidentiary hearing, such as the preliminary injunction hearing in the instant case . . . [t]he better rule would probably be to treat the hearing as if it were a trial").

[33] Ala. R. Prof'l Conduct 3.7(a).

[34] Ala. R. Prof'l Conduct 3.7(b); *see also Gilbert v. Rogina Inv. Corp.*, 991 So. 2d 681, 690 n.4 (Ala. 2008) (while "a lawyer may act as an advocate in a trial in which another lawyer from his firm may be a witness," he may not "where such representation would be adverse to a current or former client of that lawyer"). "If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also." Ala. R. Prof'l Conduct 3.7 cmt.

[35] *See, e.g.*, ECF Doc. 15 at 2; ECF Doc. 19 at 31; ECF Doc. 21 at 1; ECF Doc. 23 at 16.

of his attorney-employees were involved in preparing and testing the Protocol.[36] Those attorney-employees even videotaped themselves performing tests, and one provided a declaration "contain[ing] sensitive information regarding the flow rates for administration of nitrogen gas[.]"[37]

The comment to Rule 3.7 begins: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client."[38] Interpreting the predecessor to Rule 3.7, the Alabama Supreme Court (ASC) found no error in disqualifying a lawyer where "it was clearly advisable for [the attorney] to testify on behalf of his clients . . . supported, in part, by the fact that [the attorney] did later take the stand on behalf of his clients."[39] Defendants Hamm and Raybon have previously used the testimony of witnesses from Defendant Marshall's office in a similar lawsuit.[40]

---

[36] Defs.' Witness List, *Smith*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 15, 2023), ECF Doc. 52 at 2-3.

[37] Defs.' Resp., *Smith*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 20, 2023), ECF Doc. 103 at 9 (describing sealed exhibit). The latter was submitted in disputing Kenneth Eugene Smith's challenge to the constitutionality of the Protocol.

[38] Ala. R. Prof'l Conduct 3.7 cmt.

[39] *Harkins & Co. v. Lewis*, 535 So. 2d 104, 112-13 (Ala. 1988) (interpreting former Ala. Code of Prof'l Resp. R. 5-102(A)). "[T]he Alabama Rules of Professional Conduct replaced the Alabama Code of Professional Responsibility on January 1, 1991[.]" *Green v. Montgomery Cnty., Ala.*, 784 F. Supp. 841, 842 n.4 (M.D. Ala. 1992).

[40] Defs.' Witness List, *Smith*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 15, 2023), ECF Doc. 52 at 2-3; Defs.' Resp., *id.* (M.D. Ala. Dec. 20, 2023), ECF Doc. 103 at 9 (describing sealed declaration of James Houts).

This makes it likely they would do so again.[41] This fact, along with Defendant Marshall's involvement in drafting and testing the Protocol, establish he is a "necessary witness" because he has "relevant, material evidence [that] could not be obtained other than by calling the attorney as a witness."[42] Given the lack of an applicable exception, Rule 3.7(a)'s "shall" language renders this issue unwaivable.

### 2. Rules 1.7(b) and 1.2(a).

Alabama Rule of Professional Conduct 1.7(b) generally prohibits a lawyer from "represent[ing] a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . or by the lawyer's own interests[.]"[43] "Rule 1.7(b) governs '[s]imultaneous representation of parties whose interest in litigation may conflict, such as coplaintiffs or codefendants.'"[44] Such representation is only permitted if "(1) [t]he lawyer reasonably believes the representation will not be adversely affected; *and* (2) [t]he client consents after

---

[41] This time, however, Defendant Marshall is also a party.

[42] *Pigott v. Sanibel Dev., LLC*, No. 1:07-cv-00083-WS-C, 2007 WL 2713188, at *2 (S.D. Ala. Sept. 17, 2007) (adopting the interpretation of the "'necessary witness' standard of Rule 3.7 . . . as requiring the party seeking disqualification to establish relevant, material evidence could not be obtained other than by calling the attorney as a witness") (citations omitted).

[43] Ala. R. Prof'l Conduct 1.7(b).

[44] *Ex parte Tiffin*, 879 So. 2d 1160, 1164 (Ala. 2003) (citation omitted). *Tiffin*, noting "the general rule" that non-clients (current or former) lack standing to seek disqualification under Rule 1.7, found no reason it "should not apply in this case." *Id.* at 1165. Several years later, citing Ala. R. Prof'l Conduct 8.3, the ASC found non-clients had standing to seek disqualification. *Wheeler*, 978 So. 2d at 7; *see also In re Emp. Discrimination*, 453 F. Supp. 2d at 1332.

consultation."[45] Relatedly, Alabama Rule of Professional Responsibility 1.2(a) requires an attorney to "abide by a client's decisions concerning the objectives of representation," including "abid[ing] by a client's decision whether to accept an offer of settlement of a matter."[46]

The consultation[47] must be more detailed "[w]hen representation of multiple clients in a single matter is undertaken" and "include explanation of the implications of the common representation and the advantages and risks involved."[48] While "[a] client may consent to representation notwithstanding a conflict" under paragraph (b)(1), a lawyer cannot ask for or accept such consent, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances[.]"[49] Further, a lawyer "cannot properly ask" a client to consent unless the other clients first "consent to the disclosure necessary to obtain consent."[50] Thus, before Defendant Marshall can even ask for any co-defendant's consent to waive the conflict, he needed to consider whether he could disclose information to his co-defendants *and* obtain consent from each to

---

[45] Ala. R. Prof'l Conduct 1.7(b) (emphasis added).

[46] Ala. R. Prof'l Conduct 1.2(a).

[47] "'[C]onsultation' denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." Ala. R. Prof'l Conduct Terminology.

[48] Ala. R. Prof'l Conduct 1.7(b).

[49] *Id.* cmt.

[50] *Id.*

disclose information necessary to seek consent to waive the conflict.[51] Finally, "[i]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."[52] Given Defendant Marshall (or his attorney-employees) wrote and tested the Protocol that led to this litigation, the "probity of [Defendant Marshall's] own conduct . . . is in serious question."[53]

   Defendant Marshall is not just an attorney representing multiple clients, he is one of the clients. "Loyalty to a client is . . . impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client."[54] In *Smith*, Defendant Marshall moved to dismiss the lawsuit against Defendants Hamm and Raybon because, unlike Defendants Marshall and Ivey (neither of whom was a party), "[n]either Defendant had a role in petitioning the [Alabama Supreme C]ourt to execute Smith's sentence" and they "are wholly unconnected to the alleged

---

[51] If "one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent." *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*

unconstitutional act of 'seeking and obtaining' an execution date for Smith."[55] Defendant Marshall also asserted Defendants Hamm and Raybon were "legally required to follow . . . the directive of [Defendant Ivey]."[56] Here, Defendants Hamm and Raybon have interests and defenses different from—and inconsistent with—Defendants Marshall and Ivey.[57] Defendant Marshall's representation of himself and his co-defendants violates Rule 1.7(b).

### 3. Rule 1.8(g).

Alabama Rule of Professional Conduct 1.8(g) prohibits "[a] lawyer who represents two or more clients" from "participat[ing] in making an aggregate settlement of the claims of or against the clients . . . unless each client consents after consultation, including disclosure of the existence and nature of all claims or pleas involved and of the participation of each person in the settlement."[58] This consultation would, necessarily, require explaining the parties' potential adverse

---

[55] Defs. Combined Mot. to Dismiss & Resp. to Mot. for Prelim. Inj., *Smith*, No. 2:23-cv-656-RAH (M.D. Ala. Dec. 4, 2023), ECF Doc. 39 at 7-8.

[56] *Id.* at 8; *see also* Defs. Post-Hr'g Br. in Opp'n to Pl. Smith's Mot. for a Prelim. Inj., *Smith*, No. 2:23-cv-656-RAH, (M.D. Ala. Dec. 29, 2023), ECF Doc. 66 at 4 (arguing "Defendants [Hamm and Raybon] are not the state officials responsible for litigating criminal cases in the Alabama Supreme Court," and "[s]tate law clearly identifies the state official with that legal responsibility as someone other than either defendant"—Defendant Marshall) (citing Ala. Code § 36-15-1(b)). As noted elsewhere, Defendant Marshall's reading of § 36-15-1 is at odds with ASC precedent.

[57] For instance, it is in the interests of Defendants Hamm and Raybon to, as in *Smith*, point the finger at Defendants Marshall and Ivey. It may also be in the interests of Defendants Hamm, Raybon, and Ivey to settle Mr. Grayson's suit to avoid depositions and prevent future challenges by other prisoners by adopting Mr. Grayson's proposed alternative(s).

[58] Ala. R. Prof'l Conduct 1.8(g).

interests. Under Rule 1.8(g), Defendant Marshall would have to consider his own interests about any aggregate settlement offer while also consulting with and advising Defendants Hamm, Raybon, and Ivey about potential adverse interests arising from his own "participation . . . in the settlement."[59] This is why Rule 1.8(g) prohibits this representation.

### 4. Rule 5.4(c).

Alabama Rule of Professional Conduct 5.4(c) provides, "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."[60]

An Alabama State Bar (ASB) ethics opinion addressing insurance company staff attorneys simultaneously representing the insurance company and the insured is instructive. There, because "the relationship between insurer and insured is one in which the parties are co-clients . . . where the interests of the insured and the insurer are *fully aligned* . . . there is not a conflict of interest that would prevent staff counsel for the insured from representing the insurer."[61] The ASB did not give carte blanche, however, noting several "measures should be taken," including

---

[59] *Id.*

[60] Ala. R. Prof'l Conduct 5.4(c).

[61] ASB Ethics Opinion RO-2007-001 at 5 (emphasis added).

"disclos[ing] any and all limitations upon the representation,"[62] and "not permit[ting] the insurance company to direct or regulate the staff attorney's professional judgment in rendering legal services to the client."[63]

Defendant Marshall is a co-defendant who cannot help but "regulate" his "professional judgment in rendering legal services" to his co-defendants. Here, unlike an attorney employed by an insurance company co-client, Defendant Marshall is the employer, attorney, and co-client. Unlike the insurance company who employs an attorney, Defendant Marshall both employs and exercises "professional judgment" over himself and his attorney-employees, violating Rule 5.4(c).[64]

C. **Defendant Ivey has the authority to obtain alternate counsel for herself and Defendants Hamm and Raybon and should do so because, balancing the interests, disqualification is appropriate.**

Defendant Ivey is Alabama's chief executive.[65] She is legally superior to Defendant Marshall.[66] "In contrast to [Defendant Ivey], [Defendant Marshall] has

---

[62] *Id.* (citing Ala. R. Prof'l Conduct 1.2(c)).

[63] *Id.* (citing Ala. R. Prof'l Conduct 5.4(c)).

[64] *See, e.g.*, *id.* ("A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct."); *id.* cmt. ("Paragraph[] (b) refer[s] to lawyers who have supervisory authority over the professional work of a firm or legal department of a government agency.").

[65] Ala. Const. art. V, § 113.

[66] *See, e.g.*, *Riley*, 57 So. 3d at 733 ("It is clear from a comparison of the constitutional and statutory provisions concerning the governor and those concerning the attorney general that the governor is the superior officer."); *see also* Ala. Const. art. V, § 121 ("The governor may require information in writing, under oath, from the officers of the executive department, named in this article . . .

16

no direct and express power under the constitution."⁶⁷ The statutes prescribing Defendant Marshall's duties "contain no express provision purporting to limit the power and rights of the governor."⁶⁸ Finally, the ASC rejected an Attorney General's⁶⁹ reliance on, *inter alia*, § 36-15-21, holding, "We cannot conclude that what the legislature specifically intended to provide the governor on the one hand, it intended to authorize the attorney general to withdraw from him on the other hand through the general provisions of § 36-15-1 and § 36-15-21."⁷⁰ Here, Defendant Ivey has the authority to designate alternate counsel to represent herself and Defendants Hamm and Raybon. She should do so.⁷¹

The first of the three competing interests—being deprived of counsel of one's choice⁷²—is weak because Defendant Marshall has prevented Defendants

---

relating to the duties of their respective offices . . . [and a]ny such officer . . . who makes a willfully false report or fails without sufficient excuse to make the required report on demand, is guilty of an impeachable offense."). The "officers of the executive department [] named in this article" include Defendant Marshall. Ala. Const. art V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.").

⁶⁷ *Riley*, 57 So. 3d at 726.

⁶⁸ *Id.* at 730.

⁶⁹ At that time, Defendant Marshall's office was occupied by Troy King.

⁷⁰ *Id.* at 732 (footnote omitted).

⁷¹ Defendants Hamm and Raybon already have alternate counsel available and with whom they have an existing relationship: the attorneys of ADOC Legal. Defendant Ivey has her general counsel.

⁷² *In re Emp. Discrimination*, 453 F. Supp. 2d at 1331 (citation omitted).

17

Hamm and Raybon from using ADOC Legal and there is no indication they have chosen Defendant Marshall as their counsel. Second, prejudice to Mr. Grayson, weighs in favor of disqualification because Defendant Marshall's continued representation of his co-defendants will harm Mr. Grayson by injecting privilege issues and confusion into discovery, including depositions of their attorney, Defendant Marshall, and his agents. The third factor—the public's interest—is best served by disqualifying Defendant Marshall because his continued representation, in violation of the Alabama Rules of Professional Conduct, endangers the public's interest in "efficient use of judicial resources towards the just, speedy, and inexpensive remedy spoken for in Fed. R. Civ. P. 1"[73] and jeopardizes public confidence in the judicial system. Disqualification is appropriate and necessary. Any alternative remedy is not practical because discovery will still involve multiple claims of privilege and waiver and related evidentiary issues.

## CONCLUSION

This Court should disqualify Defendant Marshall from representing his co-defendants and controlling the representation of Defendants Hamm and Raybon. This can be achieved by ensuring Defendant Ivey exercises her constitutional authority to designate alternate counsel.

---

[73] *General Mill Supply Co. v. SCA Svcs, Inc.*, 697 F.2d 704, 711 (6th Cir. 1982).

Respectfully submitted this 28th day of August 2024.

/s/ Christine A. Freeman
Christine A. Freeman
Executive Director

/s/John Anthony Palombi
John Anthony Palombi
Kentucky Bar No. 86784
John_Palombi@fd.org

/s/Spencer J. Hahn
Spencer J. Hahn
Oregon Bar No. 043027
Spencer_Hahn@fd.org

/s/Eric Brown
Eric Brown
Colorado Bar No. 57721
Eric_Brown@fd.org

/s/Kacey L. Keeton
Kacey Leigh Keeton
Alabama Bar No. ASB-0880-k50k
Kacey_Keeton@fd.org

/s/Matt D. Schulz
Matt D. Schulz
Nebraska Bar No: 22968
Matt_Schulz@fd.org

Federal Defenders for the Middle District of Alabama
817 S. Court Street
Montgomery, Alabama 36104
(334) 834-2099

## CERTIFICATE OF SERVICE

I certify the foregoing was filed, via the CM/ECF system, on August 28, 2024, which will cause all counsel of record to receive an electronic copy.

<u>/s/John Palombi</u>
John Palombi