IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CAREY DALE GRAYSON,

      Plaintiff,

    v.

JOHN Q. HAMM, Commissioner,
Alabama Department of Corrections,

TERRY RAYBON, Warden,
Holman Correctional Facility,

STEVEN MARSHALL, Attorney
General, State of Alabama, and

KAY IVEY, Governor, State of
Alabama.

      Defendants.

No. 24-cv-376-RAH-KFP

**CAPITAL CASE**
**Execution Set for**
**November 21-22, 2024**

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants have moved to dismiss Mr. Grayson's Amended Complaint, asserting two arguments as to all Defendants: (1) Grayson is attempting to relitigate a claim he presented in state court, in violation of the *Rooker-Feldman* doctrine;[1] and 2) failure to state a claim as to both counts.[2] Defendants Marshall

---

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] ECF Doc. 52 at 1-2.

and Ivey also assert immunity.[3] Defendants also assert Mr. Grayson should be estopped from "proposing a completely new method involving fentanyl" and such an alternative is barred by the statute of limitations and the Prison Litigation Reform Act.[4] None is enough to warrant dismissal, either of individual defendants or claims, and this Court should deny it and order an Answer and commencement of discovery.

## I. *Rooker-Feldman* does not apply because the pending state court litigation is unrelated.

Defendants' primary argument for dismissal centers on their assertion Mr. Grayson cannot "relitigate" his challenge to the nitrogen execution protocol because the *Rooker-Feldman* doctrine bars relitigating issues in federal court after they have been litigated in state court.[5] While the statement of the law is correct, *Rooker-Feldman* does not apply here because nothing that occurred before the Alabama Supreme Court (ASC) deprives this Court of jurisdiction over Mr. Grayson's claims that Defendants will violate his Eighth Amendment rights.

### A. The process of authorizing and setting an execution date in Alabama.

To understand why this is different litigation requires a short recitation of how an execution date is set in Alabama. Buried in the Alabama Rules of

---

[3] *Id.*

[4] *Id.* at 26-27.

[5] *Id.* at 4.

Appellate Procedure, in a rule titled "Stay or injunction pending appeal" within a subsection titled "Stays in criminal cases," is the procedure for the ASC to authorize an execution.[6] Its two sentences provide the ASC jurisdiction to authorize, "at the appropriate time," Defendant Hamm to carry out an execution in a timeframe set by Defendant Ivey. Rule 8(d)'s only limit on Defendant Ivey's authority to set a timeframe is it must be at least 30 days after the ASC's order.[7] Defendants assert these Rule 8(d) proceedings deprive this Court of jurisdiction.

### B. The Rule 8(d) pleadings.

On June 10, 2024, invoking Rule 8(d), Defendant Marshall moved the ASC to authorize Defendant Ivey to set an execution timeframe permitting Defendant Hamm to authorize Defendant Raybon to execute Mr. Grayson.[8] The sole "relief" sought was an order authorizing Defendant Ivey to set an execution timeframe[9] because it was the "appropriate time" for an execution.[10]

Mr. Grayson responded, and from the start, clarified the purpose of his response: "[f]or the reasons set forth below, now is not the 'appropriate time' for

---

[6] Ala. R. App. P. 8(d) (Rule 8(d)). Until last year, Rule 8(d) required the ASC to set an execution date. Now, once authorized, Defendant Ivey is granted apparently unfettered authority to set or reset an execution timeframe with no further input from the ASC.

[7] *Id.* The rule sets no maximum period between the ASC's order and the execution.

[8] Ex. A.

[9] *Id.* at 1.

[10] *Id.* at 2-3.

this Court to [authorize an execution]."[11] Nowhere in his response did Mr. Grayson

ask the ASC to hold Alabama's proposed method of execution is unconstitutional.

In fact, the response alerted the ASC to this case.[12]

### 1. Mr. Grayson did not raise his Eighth Amendment claim in State court.

Defendants argue Mr. Grayson raised his Eighth Amendment claim in state

court and this federal case is an attempt to stop the state court proceedings in

violation of *Rooker--Feldman*. Fairly reading Mr. Grayson's response shows it

makes no attempt to have the ASC declare Defendants' nitrogen execution

protocol violates the Eighth Amendment. The relief he requested was for the ASC

to decline to authorize his execution *at that time*. This mirrors the relief Defendant

Marshall sought.[13] Mr. Grayson detailed the facts of this litigation in his response

and did not seek a ruling on the constitutionality of the protocol.

Proceedings under Rule 8(d) involve just one question: is it the appropriate

time for the ASC to authorize the Governor to set an execution timeframe? The

limited nature of the inquiry precludes an adequate opportunity to raise a

constitutional challenge to the method of execution. The ASC does not take

---

[11] ECF Doc. 19-1.

[12] *Id.* at 10.

[13] *Id.*

evidence or hear argument;[14] it merely acts as intermediary between Defendant

Marshall's request and Defendant Ivey's responsibility to set the timeframe for

Defendants Hamm and Raybon to execute Mr. Grayson.

Under Rule 8(d), the parties advise the court of the status of any

impediments to execution. Here, Defendant Marshall advised the ASC of no

impediments to executing Mr. Grayson and Mr. Grayson advised the Court of this

action. Because those pleadings did not concern or purport to decide, the same

action pending in this Court, this Court need not abstain.

### 2. Whether the ASC authorizes an execution does not implicate the *Rooker-Feldman* doctrine.

Defendants first argue that "[b]ecause Grayson opposed his execution on

Eighth Amendment grounds in state court and lost, this Court has no jurisdiction,"

under the *Rooker-Feldman* doctrine, "to consider the same claims here."[15] It is true

that "a party losing in state court is barred from seeking what in substance would

be appellate review of the state court judgment in a United States District Court,

based on the losing party's claim that the state judgment itself violates the loser's

federal rights."[16] However, it is important to note *Rooker-Feldman* is a doctrine

---

[14] Unless additional time is granted—as it was in Mr. Grayson's case—a death sentenced prisoner is given just seven days to respond to the motion. Ala. R. App. P. 27(a).

[15] ECF Doc. 52 at 4 (citing *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012)).

[16] *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

which "will almost never apply."[17] And further, "[a] challenge can be contextually similar to an issue adjudicated in state court without activating *Rooker-Feldman*."[18] This case is no exception—for the most basic of reasons: the litigation in the Alabama Supreme Court differs from the litigation before this Court.

This suit does not seek review of the ASC's order authorizing Defendant Ivey to set an execution time frame authorizing Defendants Hamm and Raybon to execute Mr. Grayson. Rather, it asks this Court to enjoin Mr. Grayson's execution because the way Alabama intends to execute him by nitrogen hypoxia violates the Eighth Amendment. This is distinguishable from a recent case[19] in which this Court found *Rooker-Feldman* deprived it of jurisdiction over a claim. There the plaintiff argued it was premature for Defendant Marshall to *seek* an execution date because Defendant Marshall sought the date as retaliation for Miller's public statements and because others should be executed before him.[20] This Court dismissed two counts for lack of subject matter jurisdiction because "it cannot decide this question of state law which follows a state jury's verdict convicting Miller of a criminal offense under state law."[21]

---

[17] *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

[18] *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1288 (11th Cir. 2018).

[19] *Miller v. Marshall, et al.*, No. 2:24-cv-00197-RAH (M.D. Ala June 11, 2024), ECF Doc. 41.

[20] *Id.* at 7.

[21] *Id.* at 9.

The counts dismissed in *Miller* challenged the process for seeking an execution date. None of Mr. Grayson's claims do so. Rather, he asked the ASC to delay authorizing his execution to allow this litigation to be concluded in the normal course, rather than on an emergency basis. It did not do so.

Mr. Grayson's litigation in this Court, like every other challenge to the constitutionality of Alabama's method of execution, has nothing to do with whether or when the ASC authorizes an execution. It concerns whether that execution should be carried out in a way alleged to violate the Eighth Amendment. Because it does not "amount to a direct attack on the underlying state court decision" to set an execution date, the *Rooker-Feldman* doctrine cannot apply.[22] Nor would it apply even if "the 'real purpose' behind [Mr. Grayson's] federal suit" was "to 'distract from'" the ASC's execution authorization because a "federal court cannot avoid jurisdiction under *Rooker-Feldman*, so long as the federal claim that is raised is independent of any claim raised in state court."[23]

### 3. This lawsuit is not barred by claim or issue preclusion simply because the ASC authorized Defendant Ivey to set an execution timeframe.

Defendants maintain that because the ASC authorized Defendant Ivey to set an execution time frame this suit should be dismissed under either claim or issue

---

[22] *Target Media Partners*, 881 F.3d at 1288.

[23] *Id.* at 1289.

preclusion.[24] Neither applies.

Claim preclusion bars an action if: "(1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same."[25] Defendants satisfy only the first requirement. On the second factor, the state litigation only decided it was the appropriate time to authorize Defendant Ivey to set an execution timeframe, and did not result in a judgment, let alone one deciding whether the proposed method of execution violates the Eighth Amendment. As for the fourth factor, the prior cause of action (was it an appropriate time to set an execution timeframe?) is different than this cause of action (is Alabama's nitrogen execution protocol unconstitutional under the Eighth Amendment *no matter when it is conducted*?). It is, however, the third factor that conclusively eliminates claim preclusion.

The parties here are the Commissioner of the Department of Corrections (Defendant Hamm), the Warden of Holman Correctional Facility (Defendant Raybon), the Attorney General of Alabama (Defendant Marshall), and the Governor of Alabama (Defendant Ivey). The parties before the ASC were the State of Alabama and Mr. Grayson. As Defendants argued in a previous motion, neither

---

[24] ECF Doc. 52 at 5-6.

[25] *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003).

the State nor its agencies can be defendants in §1983 actions because the State has not waived sovereign immunity.[26] Defendants should not be permitted to now claim the State is a party to this litigation and should be estopped from asserting claim preclusion.

Issue preclusion, as Defendants acknowledge, only applies if the issue(s) in the prior case (whether it is the appropriate time to set an execution timeframe) are identical, critical and necessary and fully and fairly litigated.[27] The requirements are not met here. The issue before the ASC was whether it was "the appropriate time" to authorize an execution, while the issue before this Court is whether Defendants' plan to execute Mr. Grayson is unconstitutional. Whether the execution protocol drafted and tested by Defendant Marshall, adopted by Defendant Hamm, authorized by Defendant Ivey, and implemented by Defendant Raybon is unconstitutional is irrelevant to whether an execution date should be set.[28] Neither issue preclusion nor claim preclusion support dismissal.

## II. Defendants Marshall and Ivey are proper parties because they have roles in the execution process and can be enjoined.

The next arguments concern only Defendants Marshall and Ivey, with both

---

[26] ECF Doc. 15 at 1.

[27] ECF Doc. 52 at 5 (citing *CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003)).

[28] This becomes even more evident given recent history. The ASC set execution dates for Matthew Reeves and Willie B. Smith III while both had §1983 actions pending before this Court and Defendants did not attempt to argue it had any preclusive effect.

claiming Mr. Grayson has no standing to sue them[29] and asserting quasi-judicial immunity.[30] Defendant Marshall separately asserts prosecutorial immunity.[31] None of these arguments bar suit here, particularly when they have been previously rejected by this Court.

Defendants argue the Supreme Court's recent decision in *Murthy v. Missouri*,[32] deprives Mr. Grayson of standing. This is incorrect. *Murthy* succinctly states what Mr. Grayson must do to establish standing to obtain injunctive relief: "demonstrat[ing] a substantial risk that, in the near future, []he[] will suffer an injury that is traceable to a Government defendant and redressable by injunction []he[] seek[s]."[33]  Mr. Grayson has done so.

**A. Defendant Marshall is amenable to suit and does not have immunity.**

Mr. Grayson has alleged Defendant Marshall was responsible for creating the nitrogen protocol.[34] Defendant Marshall was implicated in the implementation

---

[29] ECF Doc. 52 at 6-12.

[30] *Id.* at 11-12.

[31] *Id.* at 11.

[32] 144 S. Ct. 1972 (2024).

[33] *Id.* at 1981.

[34] ECF Doc. 42 at ¶ 18. Defendant Marshall claims this allegation is subsumed by Mr. Grayson pleading that Defendant Hamm is responsible for approving and implementing the protocol. ECF Doc. 19 at 7 n.1. However, Defendant Marshall does not deny having drafted the nitrogen protocol, a protocol that if implemented, will not protect Mr. Grayson from superadded pain. Moreover, if Defendant Marshall is responsible for drafting the nitrogen protocol, it can be inferred he would be responsible for drafting any changes to it. Finally, even if Defendant Marshall denied drafting the nitrogen protocol, that would not be grounds to dismiss because all facts pleaded by Mr. Grayson must be presumed true.

of the protocol in a pleading he filed recently in *Miller* in which he acknowledged his employee, with no scientific or medical training, trained Defendant Hamm's employee in how to place and secure the mask on a prisoner.[35] Given the mask's role in the protocol and Mr. Grayson's allegation of superadded pain from Defendants' use of the mask, he has established he will suffer an injury fairly traceable to Defendant Marshall. So not only does Mr. Grayson have standing to sue Defendant Marshall, but Defendant Marhsall also does not have immunity.[36]

### B. Defendant Ivey is amenable to suit and is not immune.

Given the ASC's authorization was given at least 30 days ago, Defendant Ivey has total control over whether, and when to set (or reset) an execution timeframe. Further, Defendant Ivey heads Alabama's executive branch and is ultimately responsible for Defendants Hamm and Raybon. As acknowledged in *Miller*, Defendant Ivey previously declared a moratorium on executions, ordered a review of the execution process, and asked the ASC to change Rule 8(d) to accommodate her plan for improving the execution process.[37]

---

[35] *Miller*, ECF Doc. 70-3. That document is now under seal but was publicly available from July 15-29, 2024. Given that *post hoc* protective order (and without conceding it should be under seal), Mr. Grayson does not attach it but asks this Court to take judicial notice of it.

[36] *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123, 168 (1908)). As for the allegations of prosecutorial and quasi-judicial immunity, those are based on Defendants' continued misinterpretation of the bases of this lawsuit. Unlike Mr. Miller, Mr. Grayson does *not* assert Defendant Marshall has acted improperly in seeking an order authorizing his execution.

[37] *Miller*, ECF Doc. 41 at 12-13.

Defendant Ivey has the authority to grant a reprieve, and a declaration that the current execution protocol violates the Eighth Amendment would redress Mr. Grayson's injury. Moreover, Defendant Ivey can order Defendant Hamm to implement one of Mr. Grayson's alternatives. For the same reasons this Court cited in *Miller*, this Court should find Mr. Grayson has standing as to Defendants Marshall and Ivey.

### III.    Mr. Grayson has stated claims for which relief can be granted.

"A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2)."[38] In ruling on a motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff."[39] Perceived lack of merit is not grounds for dismissal. "The purpose of a motion to dismiss under Rule 12(b)(6) 'is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the

---

[38] *See Robinson v. Ash*, 2017 WL 4683932, at *2 (M.D. Ala. Oct. 17, 2017).

[39] *Greene v. Ala. Dep't of Revenue*, 2017 WL 4236562, at *1 (M.D. Ala. Sept. 9, 2017).

substantive merit of the plaintiff's case.' 5B Wright & Miller, *Federal Practice & Procedure: Civil 3d* § 1356 (3d ed. 2004)."[40]

Here, Mr. Grayson has alleged "enough facts to state a claim to relief that is plausible on its face."[41] He identified the elements of each claim and pleaded facts required to support those elements.[42] The legal framework for evaluating challenges to methods of execution is well-established and derives from Supreme Court opinions in *Glossip v. Gross*,[43] and *Bucklew v. Precythe.*[44] Mr. Grayson must plead two things to state a method of execution claim:(1) the challenged method of execution "presents a risk that is sure or very likely to cause serious illness and needless suffering, and gives rise to sufficiently imminent dangers," meaning the State's chosen method gives rise to a "substantial risk of serious harm" to [Grayson] that is "objectively intolerable" and "prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment"; and (2) "an alternative that is feasible, readily implemented, and in

---

[40] *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005); *see also Baird ex. rel. Baird v. Rose*, 192 F.3d 462, 468 n.6 (4th Cir. 1999) ("[I]t is inappropriate in addressing the appropriateness of a dismissal under Rule 12(b)(6) to make a determination concerning the weight of the evidence that ultimately may be presented in support of these various positions.").

[41] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[42] ECF Doc. 42 at 10-13.

[43] 576 U.S. 863 (2015).

[44] 587 U.S. 119 (2019).

fact significantly reduces a substantial risk of severe pain," not merely an alternative that is "slightly or marginally safer."[45] Mr. Grayson has done so.

Mr. Grayson has pled that, in the only other nitrogen hypoxia execution ever conducted, there were signs of conscious suffocation, in violation of *Baze v. Rees*.[46] Specifically, he alleged Defendants' protocol contains an unacceptable risk of conscious suffocation. He also alleged Defendants' use of the mask was outside of the manufacturer's requirement; failed to reduce the possibility of conscious suffocation by providing a sedative prior to putting the mask on the prisoner; did not ensure that the flow of nitrogen was properly monitored; and did not ensure any other devices were monitored by properly trained and qualified individuals (supporting Claim II of his complaint).

Defendants' response is to say Mr. Smith was not in severe pain because there is no allegation Mr. Smith "yelled, cried out or complained—things one would expect from a man suffering severe pain."[47] Defendants forget the method being used to execute Mr. Smith deprived him of the air needed to do that and simply disputes the facts Mr. Grayson has pled, something not at issue in assessing the sufficiency of a complaint.

---

[45] *Miller*, ECF Doc. 41 at 13 (citing *Glossip*, 576 U.S. at 877).

[46] 553 U.S. 35, 53 (2008).

[47] ECF Doc. 52 at 16.

Further, Mr. Grayson pled alternatives that are feasible and readily implemented. Defendants' response challenges the details of the alternatives and claim conscious suffocation does not rise to the level of a constitutional violation.[48] Defendants claim Mr. Grayson misinterprets a quote from the plurality opinion in *Baze*. That quote says, "there is a *substantial, constitutionally unacceptable risk of suffocation* from the administration of pancuronium bromide and pain from the injection of potassium chloride."[49] Defendants interpret this sentence to mean that conscious suffocation is only unconstitutional if accompanied by pain of conscious injection of potassium chloride.[50] In other words, the Eighth Amendment permits the government to strap Mr. Grayson to a gurney and, while he is conscious, cover his head with a plastic bag until he suffocates to death. It only violates the Eighth Amendment if potassium chloride is also injected.  This is not what that sentence—or the Eighth Amendment—means. The phrase "substantial, constitutionally unacceptable risk" in that quote modifies both "suffocation" and "pain." Conscious suffocation is an unconstitutional method of execution.[51]

---

[48] ECF Doc. 52, p. 16.

[49] *Id.* (emphasis added).

[50] ECF Doc. 52 at 17.

[51] *See, e.g., Campbell v. Wood*, 18 F.3d 662, 682-85 (9th Cir. 1994) (providing history of judicial hanging and noting "[a]ppropriate drop distance is critical to conducting judicial hanging in the most humane way possible" because "[i]f the drop is too short in relation to the weight of the prisoner, death is likely to result from the mechanism of airway occlusion; that is, the condemned will asphyxiate").

As in *Miller*, Mr. Grayson has pled facts sufficient, under *Glossip* and *Bucklew*, to survive a motion to dismiss on both counts, and this Court should deny Defendants' motion.

### IV.   Mr. Grayson's fentanyl alternative is not barred by estoppel, the statute of limitations, or the PLRA.

Defendants' final argument challenges Mr. Grayson's fentanyl alternative. They assert it is barred by estoppel, the statute of limitations, and the PLRA.[52] None bars the alternative.

The first argument—Mr. Grayson should be equitably estopped because he "advocated" for or "elected" nitrogen hypoxia[53]—is unpersuasive. While Mr. Grayson elected nitrogen hypoxia—by completing and submitting a form adopted by Defendants Hamm and Raybon, that form expressly reserved the right to challenge the then-unwritten protocol.[54] That form was the basis on which the prior litigation was settled.[55] As such, Defendants Hamm, Raybon, and Marshall should be bound by its terms and estopped from arguing estoppel.

---

[52] ECF Doc. 52 at 26-27.

[53] *Id.* at 26.

[54] *Reeves v. Dunn*, 580 F. Supp. 3d 1060, 1065-66 (M.D. Ala. 2022) ("This election is not intended to . . . waive my right to challenge the constitutionality of any protocol adopted for carrying out the execution by nitrogen hypoxia.") (quotation marks and citation omitted).

[55] Joint Mot. to Dismiss, *In re: Ala. Execution Protocol Litig.*, No. 2:12-cv-316-WKW (July 10, 2018), ECF Doc. 427 at 2 ("Prior to June 30, 2018 . . . Carey Dale Grayson . . . submitted paperwork to the Warden of Holman Correctional Facility, in which [he] elected to be executed by nitrogen hypoxia.").

The second argument—the statute of limitations—cannot apply because Mr. Grayson is not challenging lethal injection; he is challenging Defendants' nitrogen hypoxia protocol within two years of its adoption. He was required to plead at least one feasible method that substantially reduces the risk of superadded pain. Defendants cite no case law requiring the alternative method to be the same as the challenged method to satisfy the statute of limitations.[56]

Finally, Defendants' reliance on the PLRA is misplaced. That is because Alabama law provides, "The policies and procedures of the Department of Corrections for execution of persons sentenced to death shall be exempt from the Alabama Administrative Procedure Act, Chapter 22 of Title 41."[57] Defendants cannot argue failure to exhaust administrative remedies when none exist. In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court held that there is an exception to the exhaustion requirement, that is "baked into" § 1997e(a)'s text: "[a]n inmate need exhaust only such administrative remedies as are 'available.'" *Id.* at 648. "Accordingly, an inmate is required to exhaust those, but only those, grievance

---

[56] Defendants cite a single case—*Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275 (11th Cir. 2015)—on the statute of limitations on methods litigation. ECF Doc. 52 at 26-27 (citing *Gissendaner*, 779 F.3d at 1283 [sic]). *Gissendaner* supports Mr. Grayson's position. *Id.* at 1280 ("A claim challenging the state's method of execution 'accrues on the later of the date on which' direct review is completed by denial or certiorari, 'or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol'") (citation omitted); *cf. Bucklew v. Precythe*, 587 U.S. 119, 139-40 (2019) ("An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law.").

[57] Ala. Code § 15-18-82.1(g).

17

procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The fentanyl alternative is properly before this Court.

## CONCLUSION

Defendants' Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted this 16th day of September 2024.

/s/John Anthony Palombi
John Anthony Palombi
John_Palombi@fd.org

/s/Spencer J. Hahn
Spencer J. Hahn
Spencer_Hahn@fd.org

/s/Eric Brown
Eric Brown
Eric_Brown@fd.org

/s/Kacey L. Keeton
Kacey Leigh Keeton
Kacey_Keeton@fd.org

/s/Matt D. Schulz
Matt D. Schulz
Matt_Schulz@fd.org

Federal Defenders for the
Middle District of Alabama
817 S. Court Street
Montgomery, Alabama 36104
(334) 834-2099

## CERTIFICATE OF SERVICE

I certify this Response to Defendants' Motion to Dismiss Amended Complaint was filed, via the CM/ECF system, on September 16, 2024, which will cause all counsel of record to receive an electronic copy.

/s/ John Anthony Palombi
John Anthony Palombi