**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 18, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-13660-P
Case Style: Carey Grayson v. Commissioner, Alabama Department of Corrections, et al
District Court Docket No: 2:24-cv-00376-RAH-KFP

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-13660

_____

CAREY DALE GRAYSON,

                                                      Plaintiff-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
HOLMAN CF WARDEN,

                                                      Defendants-Appellees.

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 4 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 2 of 13

2                       Opinion of the Court                    24-13660

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:24-cv-00376-RAH-KFP

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

JORDAN, Circuit Judge.

Carey Dale Grayson, an Alabama prisoner, appeals the district court's denial of his motion for a preliminary injunction to stop his scheduled execution by nitrogen hypoxia on November 21, 2024. Following oral argument and a review of the record, we affirm the district court's decision.[1]

**I**

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, Mr. Grayson "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

---

[1] Mr. Grayson was convicted and sentenced to death for his participation (along with others) in the 1994 kidnapping and murder of Vickie Deblieux. The underlying facts, which are not relevant to Mr. Grayson's method-of-execution claim, are set out in *Grayson v. State*, 824 So. 2d 804, 809-11 (Ala. Crim. App. 1999), *aff'd sub nom., Ex Parte Grayson*, 824 So. 2d 844 (Ala. 2001).

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 5 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 3 of 13

17-11339              Opinion of the Court                    3

injunction is in the public interest." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (internal quotation marks and citation omitted). "Failure to show any of the four factors is fatal . . . ." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

We review the district court's denial of a preliminary injunction for abuse of discretion, a deferential standard which recognizes that the district court usually has a range of permissible choice. *See Mills v. Hamm*, 102 F.4th 1245, 1248 (11th Cir. 2024). The district court's factual findings, moreover, are subject to clear error review. *See id.* That means that a finding "that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (citation omitted).

II

Nitrogen hypoxia, as set out in Alabama's protocol, causes death by introducing "pure nitrogen gas . . . to the condemned inmate through an industrial-use respirator mask until the inmate is declared dead. The protocol also calls for the use of EKG and pulse oximeter devices to monitor the . . . inmate's condition until declared dead" but "does not call for the use of a sedative in advance of the initiation of nitrogen gas." D.E. 95 at 4.

Mr. Grayson alleged in his complaint that certain aspects of Alabama's nitrogen hypoxia protocol violate the Eighth Amendment. He claimed that the protocol creates an unnecessary risk of superadded pain through conscious suffocation and survivable hypoxia-induced injury. And he asserted that the protocol fails to

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 6 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 4 of 13

4                       Opinion of the Court                    24-13660

provide for basic safety measures, such as a pre-execution medical examination, sedation, and device monitoring and mask fitting by qualified medical professionals. He proposed two alternative methods of execution: (1) a nitrogen gas protocol that includes sedation of the inmate, and (2) a sequential, intramuscular injection of ketamine followed by a fatal dose of fentanyl. *See* D.E. 95 at 34–35.

### A

As to the first preliminary injunction prong, the question for us is whether the district court "abused its discretion in concluding that [Mr. Grayson] has [not] shown a 'substantial likelihood of success' on the merits of [his Eighth Amendment] claim." *LSSi Data Corp. v. Comcast Phone LLC*, 696 F.3d 1114, 1120 (11th Cir. 2012). *See, e.g., BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("The district court did not abuse its discretion in determining that BellSouth had established a substantial likelihood of success."); *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (reviewing district court's "substantial likelihood of success" determination for abuse of discretion). In answering that question, we do not decide the ultimate merits of Mr. Grayson's claim. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ("In these circumstances, and in the light of existing case law, we cannot conclude that the district court erred by granting preliminary injunctive relief. This is the extent of our appellate inquiry, and we 'intimate no view as to the ultimate merit of [respondent's] contentions.'") (citation omitted); *Di Giorgio v. Causey*, 488 F.2d 527, 528–29 (5th Cir. 1973) ("[O]n appeal from a

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 7 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 5 of 13

17-11339 Opinion of the Court 5

preliminary injunction this Court does not concern itself with the merits of the controversy . . . No attention is paid to the merits of the controversy beyond that necessary to determine the presence or absence of an abuse of discretion.").

>Under governing Supreme Court precedent,
>
>[t]he Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." To the contrary, the Constitution affords a 'measure of deference to a State's choice of execution procedures' and does not authorize courts to serve as "boards of inquiry charged with determining 'best practices' for executions." The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is "substantial when compared to a known and available alternative."

*Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (citations omitted). "[I]dentifying an available alternative is 'a requirement of *all* Eighth Amendment method-of-execution claims' alleging cruel pain." *Id.* at 136 (citation omitted).

We have similarly explained that "[p]risoners cannot succeed on a method-of-execution claim unless they can establish that the method challenged presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and gives rise to sufficiently *imminent* dangers." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325–26 (11th Cir. 2019) (internal quotation marks and citations omitted). "[They] must also identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 8 of 15
USCA11 Case: 24-13660    Document: 23-1    Date Filed: 11/18/2024    Page: 6 of 13

6                     Opinion of the Court                  24-13660

substantial risk of severe pain. Where a prisoner claims a safer alternative to the State's . . . protocol, he cannot make a successful challenge by showing a slightly or marginally safer alternative." *Id.* at 1326.

The district court correctly identified the governing Eighth Amendment standard in its order. *See* D.E. 95 at 22–23, 28–30. It also suggested in a footnote, however, that an execution by nitrogen hypoxia resulting in "conscious suffocation" would not necessarily violate the Eighth Amendment. *See id.* at 36 n.17. This was because the Supreme Court case discussing the "constitutionally unacceptable risk of suffocation from the administration" of a certain drug and "pain from the injection" of another drug if the prisoner were not unconscious involved a challenge to lethal injection and not to nitrogen hypoxia. *See Baze v. Rees*, 553 U.S. 35, 53 (2008) (plurality opinion).

Mr. Grayson argues that this statement by the district court constitutes reversible error. *See* Appellant's Br. at 8. We disagree. A district court's articulation of the wrong legal standard is harmless when the claim fails "even under the proper standard." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 781 (11th Cir. 2024). And that is the case here. Although we concur with Mr. Grayson that a substantial risk of conscious suffocation can create an Eighth Amendment problem regardless of the method of execution being used, the evidence presented at the evidentiary hearing—discussed below—did not show that nitrogen hypoxia creates a substantial

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 9 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 7 of 13

17-11339                Opinion of the Court                     7

risk of conscious suffocation. And without such evidence, the district court's footnote about *Baze* does not call for reversal.

## B

The district court made the following findings of facts after an evidentiary hearing at which two competing expert anesthesiologists testified (Dr. Brian McAlary for Mr. Grayson and Dr. Joseph Antognini for the defendants).

• Case studies and articles submitted by the defendants "acknowledged the existence of pulmonary edema in asphyxia-related deaths due to inert gases, but did not note, opine, or discuss negative pressure caused by an upper airway obstruction as being a cause or contributor." D.E. 95 at 40. As a result, "these articles did not support Dr. McAlary's opinions about nitrogen gas causing negative pressure pulmonary edema, especially when the individual was in a conscious state. They suggest that pulmonary edema is an expected observation at autopsy, even for individuals who committed suicide." *Id.*

• Neither "[Mr.] Grayson nor Dr. McAlary claim that [Mr.] Grayson suffers from any upper airway obstruction, let alone panic and anxiety that exceeds that normally expected in anticipation of a condemned inmate's impeding execution." *Id.* at 41.

• The defendants do not intend "to add pain, let alone super-added pain, in developing and implementing the nitrogen hypoxia protocol." *Id.* at 44.

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 10 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 8 of 13

8                       Opinion of the Court                    24-13660

- Mr. Grayson's "evidence and allegations amount to speculation, a speculative parade of highly unlikely events, and scientific controversy at best. They fall well short of showing that the nitrogen hypoxia protocol creates an unacceptable risk of pain, let alone superadded pain." *Id.* at 44.

- Neither of the two inmates previously executed through the nitrogen hypoxia protocol (Kenneth Smith and Alan Miller) asphyxiated on their own vomit. *See id.* at 44 n.20.

- Dr. McAlary opined (a) that there is an almost certain risk of agony due to the conscious deprivation of oxygen that will occur due to the lack of a medical examination and sedation prior to execution and due to the use of correctional officers who lack medical or scientific training to monitor the flow of nitrogen gas into the mask, and (b) that there is a risk that Mr. Grayson could be left with permanent brain damage should the nitrogen gas be turned off before he dies. *See id.* at 45. But Dr. McAlary conceded that the "protocol only inflicts psychological pain, a type of pain that would exist regardless of the method of execution," and he provided "no evidence other than his belief of the existence of negative pressure edema," which he extrapolated from the autopsy report of Mr. Smith—a report indicating only pulmonary edema and not negative pressure pulmonary edema—and "inferences taken from hearsay eyewitness accounts of highly questionable value." *Id.* at 45–46 & 46 n.21.

- Dr. McAlary provided "no study or similar support" for his opinion that the protocol's failure to include any form of sedation

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 11 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 9 of 13

17-11339                Opinion of the Court                9

prior to the inhalation of nitrogen gas raises the risks of significant psychological pain. *See id.* at 46.

• Mr. Grayson "could make a medical request for a sedative separate and apart from the execution protocol, and there is a strong possibility that such a request would be granted so long as the request is made for therapeutic purposes." *Id.* at 46.

• The evidence about the execution of Mr. Smith was conflicting and inconsistent, but it "did show that the nitrogen hypoxia protocol was successful and resulted in death in less than 10 minutes and loss of consciousness in even less time." *Id.* at 47. The evidence as to the execution of Mr. Miller "established that his execution was quick, unconsciousness reached in less than 2 minutes, was [de]void of struggles against the restraints, and with minimal body movement as compared to the . . . execution [of Mr. Smith]." *Id.*

• Mr. Grayson presented "little evidence" about his "unsubstantiated assertion" that alleged deficiencies with the mask and its fitting increase the likelihood of the introduction of oxygen which would prolong the execution process and possibly result in a hypoxia-induced injury. *See id.* at 47.

• Based on the district court's own inspection, it was highly unlikely that the mask would dislodge or that the seal would be broken and outside air introduced if the mask is tightly secured on the condemned inmate's head in a positive pressure environment. *See id.* at 47 n.22 (adopting the same finding from *Smith v. Hamm*, 2024 WL 116303, at *20 (M.D. Ala. Jan. 10, 2024)).

10                    Opinion of the Court                    24-13660

- • "[N]o evidence was presented about [Mr.] Grayson's facial dimensions, the fitting of the mask, the circumstances in which it would become loose and why, the amount of ambient air infiltration that could prolong the execution, or how [Mr.] Grayson would survive the execution attempt in the context of the other aspects of the protocol such as the EKGs, consciousness checks, and death declaration." *Id.* at 47–48. Mr. Grayson also did not "propose an alternative mask that would work better or address his concerns." *Id.* at 48.

- • Dr. McAlary's emphasis on "the need for a pre-execution medical examination to assess the inmate for possible airway obstruction issues and other psychological conditions that could result in adding physical pain, panic, and fear" was speculative and unsupported by "any evidence specific to [Mr.] Grayson." *Id.*[2]

- • As to the medical monitoring argument, Mr. Grayson's "apprehension again travels upon theoretical concerns placed on a parade of highly unlikely horribles" and "[n]o competent evidence was provided showing that the execution team members are incapable of satisfactorily monitoring and interpreting" the EKG machines and the pulse oximeters. *See id.* at 48–49.

- • There were "real concerns" about whether Mr. Grayson's alleged alternatives are "feasible and readily implemented . . . ." *Id.*

---

[2] The district court noted, "[f]or example, [that Mr.] Grayson failed to show that he actually suffers from an airway obstruction condition or that he would suffer from any physical pain." D.E. 95 at 48.

at 49.  As to the sedative proposal, "evidence was presented showing the difficulties in requiring a condemned inmate to orally ingest anything, let alone a sedative, in aid of execution"; Mr. Grayson's own expert stated at the hearing that he could not and would not compound these sedatives or administer them; and Mr. Grayson himself previously objected to midazolam.  *See id.* at 49–50.

•  Mr. Grayson provided "no real analysis or consideration of the possible risks and side effects associated with using these sedatives in this manner."  *Id.* at 50.

•  As for the second proposed alternative, which included the injection of a fatal dose of fentanyl, Mr. Grayson "present[ed] very little evidence" and as a result did not meet his burden as to that alternative.  *See id.* at 50 n.27.

•  Dr. McAlary found "himself without any real foundational support other than an unsupported opinion . . . ."  *Id.* at 51.

•  Dr. Antognini's opinions—that that an inmate would not experience physical pain from the administration of the protocol, that Mr. Smith did not experience negative pressure pulmonary edema from his execution, that the nitrogen flow rate under the protocol does not invite bronchospasms and will lead to unconsciousness within 10 to 40 seconds, that administering midazolam orally is not as reliable as administering it intravenously (which Mr. Grayson's proposed alternative did not include), and that there are potential side effects with midazolam and ketamine—were "more credible and persuasive than those of Dr. McAlary."  *Id.* at 51.

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 14 of 15
USCA11 Case: 24-13660    Document: 23-1    Date Filed: 11/18/2024    Page: 12 of 13

12                     Opinion of the Court                     24-13660

- It is "generally uncontested from the evidence that the . . . nitrogen hypoxia protocol has been successfully used twice, and both times it resulted in death within a number of minutes." *Id.* at 51–52.

We "accept the factfinder's choice of whom to believe 'unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *United States v. Braddy*, 11 F.4th 1298, 1313 (11th Cir. 2021) (citation omitted). Given the evidence presented at the evidentiary hearing, the district court's factual findings are not clearly erroneous. *See also United States v. Stein*, 964 F.3d 1313, 1322 (11th Cir. 2020) ("Our case law is . . . unambiguous: the district court frequently must choose between dueling experts, and if that choice is reasonably based on evidence found in the record, the choice is not clear error."). And based on these findings, the district court did not abuse its discretion in concluding that Mr. Grayson failed to show a substantial likelihood of success on his claim that aspects of the nitrogen hypoxia protocol violate the Eighth Amendment. *See Bucklew*, 587 U.S. at 134; *Price*, 920 F.3d at 1325–26.[3]

---

[3] The district court, citing a Sixth Circuit decision, noted that "[o]ther courts have held that psychological pain or mental suffering cannot by itself support an Eighth Amendment claim." D.E. 95 at 46 (citing *In re Execution Ohio Execution Protocol Litig.*, 881 F.3d 447, 450 (6th Cir. 2018)). We are not sure that the Sixth Circuit is correct on this point. There may exist a form of execution that induces psychological terror or pain that is severe enough to support an Eighth Amendment claim. The Supreme Court has, after all, explained that "what unites the punishments the Eighth Amendment was understood to forbid" includes the "superadd[ition] of *terror*, pain, or *disgrace*." *Bucklew*, 587 U.S. at 133

Case 2:24-cv-00376-RAH-KFP   Document 104   Filed 11/18/24   Page 15 of 15
USCA11 Case: 24-13660   Document: 23-1   Date Filed: 11/18/2024   Page: 13 of 13

17-11339                Opinion of the Court                13

## III

The district court's denial of Mr. Grayson's motion for a preliminary injunction is affirmed.[4]

**AFFIRMED.**

---

(quoting *Baze*, 553 U.S. at 48) (emphasis added) (bracket in original) (internal quotation marks omitted). And at the Founding, "cruel" was "often defined to mean . . . '[d]isposed to give pain to others, in body *or mind* . . . .'" *Id.* at 130 (quoting 1 Noah Webster, An American Dictionary of the English Language (1828) (emphasis added and bracket in original)). Nothing in our Eighth Amendment jurisprudence suggests a special exemption for psychological terror or pain from the prohibition on cruelty. Here, however, the district court found that the likely psychological pain is "a type of pain that would exist regardless of the method of execution." D.E. 95 at 46. Because that finding is not clearly erroneous, there is no reversible error.

[4] We of course express no view on what the result would have been had the district court's factual findings been different.